**In re GENERAL DYNAMICS
ASBESTOS CASES.**

No. CML No. 1.

United States District Court,
D. Connecticut.

May 21, 1982.

**12.** *Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Stephen Embry, Matthew Shafner, O'Brien, Shafner, Garvey, Bartinik & Stuart, Groton, Conn., Stanley J. Levy, Kreindler & Kreindler, New York City, N. Y., for plaintiffs.

Peter C. Schwartz, Gordon, Muir & Foley, Hartford, Conn., for defendants.

James Ackerman, Ernest Mattei, Day, Berry & Howard, Bourke G. Spellacy, Thomas J. Shortell, Charles F. Corcoran, III, Updike, Kelly & Spellacy, Hartford, Conn., for American Asbestos Textile Corp. a/k/a Amatex.

Everett Fink, Hartford, Conn., for Asbestos Corp. of America.

Joseph Adinolfi, Jr., James M. Tanski, Donald W. O'Brien, Hartford, Conn., for Celotex Corp.

Joseph F. Skelley, Jr., Hartford, Conn., for Cummings Insulation.

Edmund T. Curran, Hartford, Conn., for Defense Apparel, Inc.

Howard B. Field, III, East Hartford, Conn., S. Robert Jelley, Patrick M. Noonan, William J. Doyle, William H. Prout, Jr., Wiggin & Dana, New Haven, Conn., for Eagle Picher.

Robert G. Montstream, Glastonbury, Conn., for Eastern Refractories Co., Inc.

Hadleigh H. Howd, Hartford, Conn., Peter Ellis, Boston, Mass., for General Dynamics Corp.

John FitzGerald, James M. Moher, Richard S. Bartlett, Howard, Kohn, Sprague & FitzGerald, Hartford, Conn., for H. K. Porter Co., Inc.

Peter C. Schwartz, Philip J. O'Connor, Gordon, Muir, & Foley, Hartford, Conn., for Johns-Manville Corp., Johns-Manville Products, Inc., Johns-Manville Sales Corp.

Vincent J. Dowling, Patrick J. Flaherty, Cooney, Scully & Dowling, Hartford, Conn., for Owens-Corning Fiberglas Corp. a/k/a Corning Glass Works Corp.

Maurice T. FitzMaurice, Robert J. Hebron, Lawrence H. Lissitzyn, David E. Rosengren, Reid & Riege, P. C., Hartford, Conn., for Owens-Illinois Corp. and Owens-Illinois Glass Corp.

R. Cornelius Danaher, Jr., Robert C. Danaher, Frederick B. Tedford, Joyce A. Lagnese, Danaher, Lewis & Tamoney, Hartford, Conn., for Pittsburgh-Corning Corp.

Arnold J. Bai, James E. Coyne, Dennis M. Laccavole, Bai, Pollock & Dunnigan, Bridgeport, Conn., for Raybestos Manhattan, Inc.

Thomas J. Hagarty, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for Sepco Corp.

Henry C. Ide, Barbara A. Rezner, Bailey & Wechsler, Hartford, Conn., for Shook & Fletcher Insulation Co.

John R. FitzGerald, James M. Moher, James T. Haviland, II, Howard, Kohn, Sprague & FitzGerald, Hartford, Conn., for Southern Textile Corp. f/k/a Southern Asbestos Corp.

Scott L. Gorland, Civil Div., Dept. of Justice, Washington, D. C., Alan H. Nevas, U. S. Atty., John B. Hughes, Asst. U. S. Atty., New Haven, Conn., for United States of America.

Gregory C. Willis, Willis & Holahan, Bridgeport, Conn., for Westinghouse Elec. Corp.

## RULING ON THIRD–PARTY DEFENDANT GENERAL DYNAMIC'S MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

A number of individual suits have been filed in this court by plaintiffs who allege that they or the individuals whom they represent have suffered injuries as a result of exposure to asbestos products during the course of their employment at the Electric Boat Division of the General Dynamics Corporation (Electric Boat). Many of these individual actions have been consolidated for certain purposes under the caption, C.M.L. 1. Nine of the primary defendants in these cases, Raybestos-Manhattan, Inc., American Asbestos Textile Corporation, Unarco Industries, Inc., H. K. Porter Company, Inc., The Southern Asbestos Corporation, Eastern Refractories Company, Inc., Cummings Insulation Company, Owens-Corning Fiberglas Corporation and Westinghouse Electric Corp., have filed third-party complaints against Electric Boat alleging that Electric Boat is obligated to indemnify the defendants and third-party plaintiffs for any liability to the plaintiffs they may incur in these lawsuits. These third-party complaints make virtually identical allegations against Electric Boat and shall be treated, for purposes of this motion, as being identical.

The third-party complaints against Electric Boat seek indemnification on the basis of both tort-based theories and a theory of an implied contractual obligation of indemnification. Electric Boat has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure by motion dated December 3, 1981. The issues presented by this motion are virtually identical in all substantive respects to those presented by a motion made in 1979 by Electric Boat in the *Robert Ward* case, Civil H–76–54, and the parties have agreed to rely upon the briefs and arguments made to the court in connection with that earlier motion.

## DISCUSSION

The affected employees in these cases filed claims against Electric Boat as their employer under the federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*, and are presently receiving or have received benefits thereunder. Section 5 of the LHWCA provides that the liability of an employer subject to the compensation provisions of the Act

> shall be exclusive and in place of all other liability of such employer to the employee ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death ....

33 U.S.C. § 905(a). The issue thus presented by this motion is whether, notwithstanding Electric Boat's statutory immunity, a third-party tortfeasor which is held liable to an employee of Electric Boat for a work-related injury may transfer all or part of that liability back to the employer.[1]

---

1. Since Electric Boat's liability to the plaintiffs is governed by the federal LHWCA, rather than the Connecticut Workmen's Compensation Act, Conn.Gen.Stat. §§ 31–275 *et seq.*, the scope of its immunity from suit by a third party must, logically, also be governed by federal law. *Cf. Galimi v. Jetco, Inc.*, 514 F.2d 949, 952 (2d Cir. 1975) (federal law, rather than state law, gov-

The third-party plaintiffs assert a right to recover over from Electric Boat on the basis of Electric Boat's relative culpability as a tortfeasor and on the basis that Electric Boat breached an implied representation and warranty to the third-party plaintiffs. These claims will be discussed in turn.

### A. Tort-based contribution or indemnity

The third-party plaintiffs assert a right to contribution or indemnity from Electric Boat based on Electric Boat's alleged negligence in failing to provide adequate safeguards for the health of its employees who handled asbestos products. It has clearly been held in this circuit, however, that the elimination of the employer's tort liability under the exclusive liability provision of the LHWCA eliminates any third-party claim for indemnity or contribution based on the tortious conduct of the employer. *See Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 719–20, 722 (2d Cir. 1978); *cf. Slattery v. Marra Brothers, Inc.*, 186 F.2d 134, 138–39 (2d Cir.), *cert. denied*, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951) (exclusive liability provision of state workmen's compensation law). In *Slattery v. Marra Brothers, Inc.*, Judge Hand, rejecting a third-party claim to recover over against a negligent employer based on the latter's "active" negligence, stated:

> So far as we can see therefore there is nobody of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result.

*Id.* at 139. *Accord, e.g., White v. Texas Eastern Transmission Corp.*, 512 F.2d 486,

489 (5th Cir. 1975), *cert. denied sub nom. Bettis Corp. v. Charles Wheatley Co.*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976) (LHWCA); *Austin v. Johns-Manville Sales Corp.*, 508 F.Supp. 313, 315 (D.Maine 1981) (LHWCA); *Oman v. Johns-Manville Corp.*, 482 F.Supp. 1060, 1072–73 (E.D.Va. 1980), *aff'd. sub nom. White v. Johns-Manville Corp.*, 662 F.2d 243 (4th Cir. 1981) (LHWCA).

 Only where there exists an independent *contractual* relationship which creates an independent duty on the part of the employer to indemnify the third-party plaintiff can the exclusive liability provision of the LHWCA be overcome. *Zapico v. Bucyrus-Erie Co.*, 579 F.2d at 722; *Santisteven v. Dow Chemical Co.*, 506 F.2d 1216, 1218–19 (9th Cir. 1974); *Ocean Drilling & Exploration Co. v. Berry Brothers Oilfield Service, Inc.*, 377 F.2d 511, 512 (5th Cir.), *cert. denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967). Since the exclusive liability provision of the LHWCA precludes the right to recover over against the employer on a tort-based theory, Electric Boat is entitled to judgment as a matter of law with respect to the third-party claims based upon Electric Boat's alleged simple and active negligence.

### B. Contract-based indemnity claims

In order to succeed on these third-party claims, therefore, the third-party plaintiffs must establish either an express or implied contractual right to indemnification from Electric Boat. There are no allegations that any express agreements to indemnify have been made by Electric Boat, nor is there any contention that further discovery will uncover such express agreements. The only issue remaining before the court, then,

---

erns third-party claim where injured plaintiff had obtained compensation benefits from employer/third-party defendant under the Federal Employee's Compensation Act).

None of the conclusions reached in this case, however, would appear to be any different under Connecticut law in light of the recent opinion of *Therrien v. Safeguard Manufacturing Company*, 35 Conn.Sup. 268, 408 A.2d 273 (Super.Ct., Dist. Litchfield 1979), *aff'd.*, 180 Conn.

91, 429 A.2d 808 (1980). As the Connecticut court concluded, in a factual setting similar to the one presented in this action:

> The third party defendant employer had no duty of care with regard to the third party plaintiff manufacturer; ... and workmen's compensation is the exclusive remedy against an employer in the absence of some special relationship.

*Id.* at 274, 408 A.2d 273.

is whether Electric Boat, as a *purchaser* of goods sold by the third-party plaintiffs, impliedly agreed to indemnify them for the amount of any recovery by plaintiff. If such an implied contractual obligation exists, it must arise either by operation of law or by the affirmative conduct of the parties.

First, it is clear that no such implicit obligation arises as a matter of law. It is well accepted that a purchaser of a product undertakes no implicit obligation to reimburse the manufacturer or supplier thereof, who itself is found to have breached a duty to the plaintiff, for any losses caused by the purchaser's negligent use of the manufacturer's or supplier's product. *See, e.g., Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 464 (8th Cir. 1977); *Santisteven v. Dow Chemical Co.*, 506 F.2d at 1219–20; *Oman v. Johns-Manville Corp.*, 482 F.Supp. at 1063. For example, in *Dulin v. Circle F Industries, Inc.*, the court stated:

> We do not accept [the manufacturer's] argument that a user of an article supplied by another owes to the latter any duty of care in connection with the use of the article so as to impose upon the former any duty to indemnify the supplier with respect to liability imposed upon him for damages resulting from a misuse of the product, at least where the supplier himself has been guilty of negligence. In the field of products liability the chain of indemnity ordinarily runs down the chain of distribution and not in the reverse direction.

558 F.2d at 464.

The case of *Santisteven v. Dow Chemical Co.* presents factual circumstances very close to those alleged in the instant case. The plaintiff there, who was injured while using an industrial caustic soda manufactured by Dow Chemical, brought suit against Dow on theories of negligence and strict liability. Dow impleaded the plaintiff's employer, Kennecott Copper Corp., alleging that Kennecott's failure to properly instruct its employee and to provide a safe working environment were the sole proximate causes of the accident. The Court of Appeals for the Ninth Circuit af-

firmed the trial court's dismissal of the third-party complaint against Kennecott. The court first noted that:

> most of those jurisdictions which permit indemnification in the face of an exclusivity clause do so on the ground that there has been a breach of an independent duty owed by the third party defendant to the third party plaintiff.

506 F.2d at 1218–19. After determining that Kennecott had not undertaken an express contractual obligation to Dow, the court concluded that there was no other basis in that case to find that Kennecott owed an independent duty to Dow:

> Dow's liability arises because of a breach of a duty it owes to users of its products—in this instance, a worker. Assumably, Kennecott has also breached a duty owed to the same worker by its negligence. Under Dow's theory, the whole burden of loss would be shifted whenever the employer was negligent in any way because the employer would have failed in its duty to extricate the third party from possible liability. Yet indemnity does not work in that way.

506 F.2d at 1219.

In the decision of *Zapico v. Bucyrus-Erie Co.*, the Second Circuit Court of Appeals also clearly indicated that a purchaser of goods does not impliedly agree to indemnify its supplier, who itself has breached a duty to the plaintiff, for losses due to the purchaser's negligent use of the supplier's product. In *Zapico*, one longshoreman was killed and another injured in the course of loading aboard a ship a large hydro-crane manufactured by the defendant Bucyrus-Erie Company. Bucyrus-Erie, alleged to have negligently manufactured the crane, filed a third-party complaint against the longshoremen's employer, a stevedoring company, claiming that the employer had negligently furnished an incompetent employee to drive the crane. A jury found both parties to have been negligent, and that each was 50% responsible for the accident. The Court of Appeals reversed a judgment which awarded the third-party plaintiff manufacturer recovery against the

employer for 50% of the amount the manufacturer had been adjudged liable to the plaintiffs. The court held that the compensation-paying employer could not be held liable on the third-party claim since there was no implied agreement by the employer to indemnify the manufacturer. 579 F.2d at 722–23.

In that opinion by Judge Friendly, the Court of Appeals held that even if the employer were negligent, it was not subject to a third-party suit by the manufacturer of the crane. The court stated:

> In a sense, Bucyrus is asking us to hold a user liable to a manufacturer for the former's negligent use of the latter's defective product. This we decline to do. Cf. 2A Larson, [*Workmen's Compensation Law* § 76.44 at 14–402] ("But when a purchaser buys a product, does he make an implied contract with the manufacturer to use the goods in such a way as not to bring liability upon the manufacturer? This would be stretching the concept of contract out of all relation to reality.").

579 F.2d at 723.[2] Professor Larson, quoted in *Zapico, supra,* goes on to state:

> Clearly certain independent obligations run with the sale from the manufacturer to the buyer. But it seems unlikely that any court would be prepared to hold that independent *contractual* obligation runs from the buyer to the manufacturer. To do this a court would have to announce the following doctrine: "Whenever a buyer purchases an article from a manufacturer, the buyer assumes an independent *contractual* obligation to the manufacturer not to use the article in such a way as to bring liability upon the manufacturer."
>
> There seems to be no authority for this proposition, and there is considerable authority to the contrary.

2A Larson, *Workmen's Compensation Law* § 76.44 at 14–404 to 14–405 (emphasis in original). *See also, White v. Johns-Manville Corp.,* 662 F.2d 243, 248 (4th Cir. 1981).

■ In sum, an implied contractual obligation of indemnity does not arise by operation of law, but, as the term "contractual" suggests, only where consent to such an obligation can fairly and reasonably be inferred from affirmative conduct of the purchaser other than the mere purchase of the product.

The third-party plaintiffs argue that such affirmative conduct by Electric Boat can be found in the instant case by virtue of the fact that Electric Boat purchased asbestos products pursuant to explicit military standards and specifications issued by the Department of the Navy and adopted by Electric Boat. They argue that by adopting such explicit standards and specifications for the asbestos products it ordered, Electric Boat impliedly represented and warranted that it knew the proper manner of use of said products and that it would require the use of due care in the handling of said products. They argue that Electric Boat breached these implied representations and warranties and that on account thereof, they are entitled to indemnification from Electric Boat.

■ It is not disputed in this case that Electric Boat's purchase orders referred to government-promulgated specifications. That fact, however, is not sufficient to imply a contractual obligation on the part of Electric Boat to indemnify the third-party plaintiffs. If the plaintiffs in these cases recover against the defendants/third-party plaintiffs—a prerequisite to their claims for

---

**2.** *Zapico* cannot be distinguished by arguing that the employer in *Zapico*, unlike Electric Boat in the instant case, was not the purchaser of the manufacturer's product but a mere user of the product. (The crane in *Zapico* had been purchased by the owner of the vessel; the employer/third-party defendant was providing a service for the vessel owner.) The third-party plaintiffs argue that a purchaser of a product, by virtue of being in a contractual relation-

ship with the supplier, stands in a different position from a mere user with regard to undertaking an implied obligation to indemnify the supplier. This argument is without merit, however, in light of the *Zapico* court's citation to Larson, quoted *supra*, which demonstrates that the court's rejection of the manufacturer's indemnity claim is equally applicable to purchasers as well as users.

indemnity—they must do so on the basis of their exposure to asbestos fibers contained in the products manufactured and/or sold by the third-party plaintiffs. The manufacturers do not contend, nor is there any evidence to indicate, that their decision to use asbestos in their commercial products was induced by Electric Boat. There is also no contention, nor any evidence so indicating, that the products sold to Electric Boat pursuant to military specifications differed in any material respect from those regularly sold by these parties commercially. Thus they cannot logically contend, and indeed they do not, that the requirements of the military specifications referred to in Electric Boat's purchase orders created in any way a risk to the plaintiffs which was not inherent in the ordinary and voluntary marketing of asbestos products. In these circumstances, there is no basis upon which to conclude that Electric Boat, by ordering products pursuant to military specifications, impliedly represented that the products were safe for their intended use. To accept arguments of the third-party plaintiffs, for which no authority of relevance is cited, would truly turn "indemnity on its head," *Santisteven v. Dow Chemical Co.*, 506 F.2d at 1219, since the representation that a product is safe for its intended use normally flows from the manufacturer to the purchaser, not vice versa.

■ In essence, the third-party plaintiffs argue that Electric Boat should not be treated as an ordinary purchaser of a product, but that as a highly sophisticated industrial commercial purchaser, Electric Boat should be charged with a "higher fiduciary-type standard of care with regard to the use of the subject product." To the extent that this argument seeks to establish that Electric Boat breached a duty of care owed to the plaintiffs, this is merely a re-statement of the tort-based indemnity claim, which, as discussed above, cannot overcome Electric Boat's statutory immunity under the LHWCA. To the extent that the third-party plaintiffs argue that this "higher" standard of care inures to the benefit of the supplier of the product, this court finds no support in the case law for such a proposition.[3]

■ The instant case is not one where the purchaser, Electric Boat, is alleged to have taken upon itself exclusive responsibility for designing, assembling, and ensuring the safety of the product, in which case the purchaser's warranty of the safety of the product may be implied. *See Roy v. Star Chopper Co., Inc.*, 442 F.Supp. 1010, 1020 (D.R.I.1977), *aff'd*, 584 F.2d 1124 (1st Cir. 1978). On the contrary, no facts have been alleged which would distinguish the cases at bar from the consistent line of cases holding that the purchaser of a product owes no duty to its supplier to use the product in a particular manner. Thus, even if all of the facts alleged in the third-party complaints were proven, there would be no legal basis upon which the triers of fact could conclude that Electric Boat impliedly agreed to hold the third-party plaintiffs harmless for any recovery by plaintiffs. Since a contract of indemnity cannot be implied on the basis of the facts which have been pleaded in these third-party actions, Electric Boat is entitled to judgment as a matter of law with respect to all of the contract-based indemnity claims pleaded in these third-party complaints. *See* Fed.R.Civ.P. 56(c).

For the foregoing reasons, third-party defendant Electric Boat's motion for summary judgment is granted dismissing all claims against it raised by the third-party complaints of Raybestos-Manhattan, Inc., American Asbestos Textile Corporation, Unarco Industries, Inc., H. K. Porter Com-

---

**3.** The one case relied upon by the third-party plaintiffs, *Timreck v. Eastman Kodak Co.*, No. H–75–277 (D.Conn. Oct. 26, 1978)—a previous decision of this court—does not provide support for the third-party plaintiffs' position. In *Timreck*, this court simply recognized that one contention of the manufacturer/third-party plaintiff was that an "industrial commercial purchaser" has an implied contractual obligation to indemnify its supplier for losses resulting from its negligent use of the product. In the circumstances of that case, however, this court did not have to reach the merits of that claim and expressed no view as to its legal sufficiency.

pany, Inc., The Southern Asbestos Corporation, Eastern Refractories Company, Inc., Cummings Insulation Company, Owens-Corning Fiberglas Corporation, and Westinghouse Electric Corp. in the cases consolidated under the caption C.M.L. No. 1.

SO ORDERED.