[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE THIRD-PARTY COMPLAINT
The third-party defendant, Kowalsky Brothers, Inc. (hereinafter "Kowalsky"), has moved to strike the Third-party Complaint filed by defendants/third-party plaintiffs, Stearns Wheler, LLC, J. Gage Muckleroy, and Darren M. Oustafine on the grounds that it fails to state a cause of action for indemnification or it alleges causes of action which are barred by the Workers' Compensation Act, Connecticut General Statutes § 31-284 (a).
 Allegations of the Third-party Complaint
The Third-party Complaint alleges that Stearns Wheler, J. Gage Muckleroy and Darren M. Oustafine (hereinafter either collectively "Stearns Wheler" or "third-party plaintiffs") are defendants in a civil action brought by the plaintiffs Manuel Afonso, Administrator of the Estate of Antonio Afonso, and Maria Afonso. In that civil action, the plaintiffs allege that Stearns Wheler, as well as other defendants were negligent in various respects, such that their negligence caused the death of plaintiffs' decedent, Antonio Afonso, on or about July 23, 1998.
Count One of the Third-party Complaint alleges that at the time of his death, Antonio Afonso, was an employee of Kowalsky. Count One further alleges that on or about January 20, 1998, Stearns Wheler sent a letter to Kowalsky, which invited Kowalsky to submit a lump sum price for certain construction work to be done for Lansdowne Condominium Association, for which Stearns Wheler was the agent. On two subsequent occasions, February 23, 1998 and April 16, 1998, Kowalsky submitted a lump sum price in response to Stearns Wheler's letter. Kowalsky's responses are attached to the third-party complaint and made a part of the complaint as if fully set out. The First Count alleges that the January 20, 1998 letter from Stearns Wheler to Kowalsky, and CT Page 2905-b Kowalsky's response on February 23, 1998 and April 16, 1998, followed by Kowalsky's commencement of the work described in the January 20, 1998 letter, constituted a contract between Stearns Wheler and Kowalsky.
The January 20, 1998 letter stated that Kowalsky would "[e]rect and maintain all safety apparatus throughout the construction period and dismantle and remove same upon completion of the project," provided that "[t]he work to be performed in this Request for Proposal shall be done so in a first class workmanlike manner . . ." and provided that "[t]he Engineer shall not be liable for any defective work performed by the Contractor, nor claims of every kind or nature, that may arise in connection with the Agreement."
Count One further alleges that "pursuant to the contract, Kowalsky owed these defendants an independent legal duty to erect and maintain all safety apparatus and implement appropriate measures with respect to job safety," that Kowalsky "owed these defendants a duty to perform work in a first class workmanlike manner," and that Kowalsky "owed these defendants a duty of indemnity for defective work and for claims of every kind or nature arising in connection with the contract."
Count One alleges that Kowalsky breached the duties it owed Stearns Wheler, under their contract by failing to undertake numerous safety measures, such as atmosphere testing, employee training, or providing emergency retrieval equipment or an oxygen supply, which it had committed to maintain. Due to Kowalsky's breach of its duties to the third-party plaintiffs, Kowalsky's employee Antonio Afonso died. Count One seeks contractual indemnity from Kowalsky for any loss, liability, judgment or settlement that Stearns Wheler may incur as a result of the claims brought by the plaintiffs.
Count Two incorporates the allegations of Count One and further alleges that Kowalsky "also had an implied duty under all the circumstances to these defendants to provide its workers with safe working conditions and adequate training," and that Kowalsky breached that duty. Count Two further alleges that Kowalsky is liable at common law to indemnify Stearns Wheler for any loss, liability, judgment, or settlement they incur as a result of the claims made against them by the plaintiffs.
Count Three alleges that Kowalsky violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"). Kowalsky allegedly held itself out to the community, including to the third-party plaintiffs, as an experienced and qualified contractor capable of CT Page 2905-c undertaking construction projects which involved working in confined spaces. Kowalsky was allegedly not qualified to undertake work in confined spaces, because it had failed to acquaint itself with or keep up with regulatory requirements established by the federal government for the safety of its employees.
Count Three further alleges that Kowalsky's failure to comply with applicable federal laws, together with its offering of its services to the public while being in a state of noncompliance, and its rendering of services without having satisfied its training and safety obligations under law, constitute a violation of CUTPA, as they are "unfair" and/or "deceptive acts or practices" in the conduct of trade or commerce, as those terms are used in Conn. Gen. Stat. § 42-110b (a). Third-party plaintiffs allege they have suffered an "ascertainable loss" within the meaning of Conn. Gen. Stat. § 42-110g (a), as a result of the Kowalsky's violation of CUTPA, and may suffer further loss if the claims of plaintiffs in this action are sustained.
 Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
"It is incumbent on a Plaintiff to allege some recognizable cause of action" in the complaint and it is not the burden of the defendant to attempt to correct the deficiency. Brill v. Ulrey, 159 Conn. 371, 374,269 A.2d 262 (1970). A motion to strike is an appropriate means of presenting to the court legal issues at the outset of litigation. Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988). "Whenever a party wishes to contest . . . the legal sufficiency CT Page 2905-d of any such complaint . . . or any count thereof, because of the absence of any necessary party . . . that party may do so by filing a motion to strike the contested pleadings or part thereof." George v. St. Ann'sChurch, 182 Conn. 322, 325, 438 A.2d 97 (1980).
Although the exclusive remedy provision of the Workers' Compensation Act, Connecticut General Statutes § 31-284 (a) is generally a bar to all negligence claims against an employer for damages to its employee, where a party against whom recovery for negligence is sought seeks to implead as a third-party defendant the employer of the plaintiff, the exclusive remedy provision does not bar recovery from the employer in indemnity if the employer can be said to have breached an independent duty to the third-party plaintiff. Ferryman v. Groton, 212 Conn. 138,145, 561 A.2d 432 (1989). The Court in Ferryman stated:
When the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution [or indemnification] is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive-remedy clause. But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity recovery in the form of indemnity, may be allowed. The right to indemnity is clear when the obligation springs from a separate contractual relation, such as an employer-tenant's express agreement to hold the third-party landlord harmless, or a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but when the indemnity claim rests upon the theory that a "primary" wrongdoer impliedly promises to indemnify a "secondary" wrongdoer, the great majority of jurisdictions disallow this claim.
2A A. Larson, [Workmen's Compensation Law], 76.
212 Conn. at 144-45.
Various Superior Courts have considered whether third-party complaints against employers are permissible under Ferryman: Peterson v. Sabini,
Superior Court, Judicial District of Fairfield, No. CV95 0327596S,1996 Ct. Sup. 5284-R (Aug. 23, 1996, Hauser, J.) (third-party complaint stricken because no sufficient independent duty alleged); Bremseth v.Conn. Light Power Co., Superior Court, Judicial District of Hartford-New Britain, at Hartford, No. CV93 0526545 S, 1995 Ct. Sup. 9107
(Aug. 11, 1995, Corradino, J.) (third-party complaint stricken because no sufficient independent duty alleged); Carolina v. Rome/Iron Works, Superior Court, Judicial District of New Haven, Docket No. 316233 CT Page 2905-e (December 7, 1994, Fracasse, J.) (third-party complaint against plaintiff's employer stricken); Shores v. Arthur Industries, Inc.,
Superior Court. Judicial District of New London, Docket No. 517066,8 CSCR 266, 8 Conn.L.Rptr. 337 (February 10, 1993, Teller, J.) (third-party complaint against plaintiff's employer permitted where there was a lease between plaintiff's employer and defendant requiring employer to maintain defendant as an insured), Thibeault v. Mark Industries, Superior Court, judicial district of Hartford, Docket No. 504396,8 Conn.L.Rptr. 3 (November 27, 1992, Dunn, J.) (third-party complaint against plaintiff's employer permitted where defendant alleged a specific indemnification agreement existed pursuant to a lease between it and the employer); Roundtree v. AM Manufacturing Company Inc., Superior Court, judicial district of New Haven, Docket No. 338311 (September 27, 1995, Corradino, J.) (third-party complaint stricken where court finds no independent duty to indemnify).
In Peterson v. Sabini, supra, the court stated that "[a]lthough establishing that an implied promise to indemnify or an independent duty existed between proposed third-party plaintiffs and those sought to be impleaded may overcome the workers' compensation exclusivity bar, courts have construed this exception very narrowly. Indeed, in cases with similar factual scenarios, courts have refused to permit third-party actions against a plaintiff's employer unless it was clear that some independent legal duty was owed to the defendant by the employer." It granted the motion to strike the third-party complaint on the grounds that that complaint alleged no more than simple negligence premised upon a duty owed to the plaintiff, not to the defendants and that the employer/third-party defendant breached a contract without pointing to any specific contractual provision which could arguably give rise to an independent duty.
Similarly in Bremseth v. Conn. Light Power Co., supra, the court noted the holding of Ferryman that "allegations that are based solely upon the `active or primary negligence' versus the passive negligence principles of Kaplan v. Merberg Wrecking Corporation [152 Conn. 415] are simply inadequate to establish the independent relationship that would obviate the operation of the exclusive remedy doctrine in (the employer's) favor." 212 Conn. at 145. The court struck the third-party complaint because the supposed independent duties alleged were merely allegations that the employer was actively negligent "a la Kaplan."
The third-party defendant argues that the First Count of the Third-party Complaint fails to allege a specific agreement to indemnify as required under Burkle v. Car Truck Leasing Co., 1 Conn. App. 54,467 A.2d 1255 (1983). However, in Ferryman, the Court held that the CT Page 2905-f exclusivity bar of § 31-284 could be overcome by an express or an implied independent duty to indemnify. 212 Conn. at 146. When taken in a manner most favorable to the Third-party Plaintiff, as it must be, the First Count of the Third-party Complaint alleges that there was a contract between Kowalsky and Stearns Wheler, which created an implied independent legal duty to indemnify. Therefore, the Motion to Strike the First Count is denied.
The Second Count of the Third-party Complaint alleges a duty "implied under the circumstances." It cannot allege a duty implied by the purported contract because that has already been alleged in the First Count. Thus, it seems to allege no more than the Kaplan-type active negligence of Kowalsky, which Ferryman expressly held to be insufficient to overcome the bar of § 31-284. Therefore, the Motion to Strike the Second Count of the Third-party Complaint is granted.
Kowalsky moves to strike the Third Count, which asserts a cause of action based on the Connecticut Unfair Trade Practices Act, §§ 42-110a
et seq., "CUTPA," on the grounds that it does not seek indemnification, but rather, sets out an independent cause of action which is not permitted in a third-party complaint brought under § 52-102a and Practice Book § 10-11.
The Third-party Plaintiff has conceded that the Third Count does not seek indemnification.
The Third Count alleges in pertinent part:
24. Kowalsky was not qualified to undertake work in confined spaces, because it had failed to acquaint itself with or keep up with regulatory requirements established by the federal government for the safety of its employees, and it failed to implement those requirements with respect to providing safety equipment and training for its employees, including Antonio Afonso.
It further alleges that the third-party plaintiff suffered "ascertainable loss" as a result of Kowalsky's failure to follow the required practices. It does not state what that ascertainable loss was. However, since Mr. Afonso died, it appears that the real loss was suffered by his estate, and Maria Afonso, his spouse, the plaintiffs in this lawsuit, and any loss that the third-party defendants suffer will only occur if those plaintiffs succeed in this lawsuit against them.
The third-party defendant argues that it was brought into this action pursuant to Practice Book § 10-11, which makes clear that a CT Page 2905-g third-party plaintiff is limited to claims for indemnity and contribution as to the claims asserted by the original plaintiff. In Commissioner v.Lake Phipps, 3 Conn. App. 100, 102, 485 A.2d 580 (1985) the Court stated, "As a fundamental and threshold requirement, a third-party plaintiff must allege that the third-party defendant is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim . . ."
Since the Third Count of the Third-party Complaint is not one for indemnification, it is not properly the subject of a Third-party Complaint which has been brought pursuant to § 10-11, and therefore, is ordered stricken.
Kowalsky argues that the same rationale which prevents the third-party plaintiffs from pursuing an independent cause of action also prevents them from recovering compensatory damages, punitive damages, and attorneys fees. Since the court has stricken the Third Count, which set forth an independent cause of action under CUTPA, the prayer for relief seeking compensatory damages, punitive damages and attorneys fees under CUTPA is also ordered stricken.
 By the court, Aurigemma, J.
CT Page 2905-h